UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 15 CR 263 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Kenneth Jackson, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant, Daryl Dane Donohue's, Motion for Judgment of Acquittal on Count 1, Or, Alternatively, a New Trial on Count 1 (Doc. 123) and Defendant Deciancio's Motion for Acquittal/New Trial (Doc. 124). For the following reasons the motions are DENIED.

**FACTS**

The government filed a multi-count indictment against defendants, Kenneth Jackson, William Schureck, Dennis Deciancio, and Daryl Dane Donohue based on a scheme to defraud

1

investors.  The gist of the scheme involved the making of false representations regarding the marketability of a medical device known as the Sharps Terminator in order to obtain investor funds.  These representations primarily centered around the approval status of the device by the FDA.  After a lengthy trial, a jury convicted all four defendants of a number of counts, including count one, which charged the defendants with engaging in a conspiracy to commit mail and wire fraud.

Defendants Deciancio and Donohue now move for an acquittal or, alternatively, a new trial with regard to count one.  The government opposes the motion.

**ANALYSIS**

Rule 29 of the Federal Rules of Criminal Procedure dictates that the court  "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  In assessing a defendant's motion for acquittal, the court takes the evidence in the light most favorable to the government and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Connery*, 867 F.2d 929, 930 (6th Cir. 1989).

> The relevant question...is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In making such an assessment, we may rely upon circumstantial evidence alone to support the jury verdict, but we may not substitute our judgment for that of the jury.  A criminal defendant faces a very heavy burden in attempting to overturn the denial of a Rule 29 motion.

*United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014)(citations and quotations omitted).

Rule 33 provides that a court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the verdict was against the manifest weight of the

evidence." *United States v. Munoz,* 605 F.3d 359, 373 (6th Cir. 2010) (international citation omitted). Under this motion, the district judge may act as a "thirteenth juror," assessing the credibility of witnesses and the weight of the evidence. *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir. 1998). "Generally, such motions are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict. " *United States v. Graham,* 125 Fed. Appx. 624, 628 (6th Cir. 2005). Acting in the interest of justice under Rule 33 also "allows the grant of a new trial where substantial legal error has occurred." *Munoz,* 605 F.3d at 373. However, a defendant in a criminal case "bears the burden of proving that a new trial should be granted." *United States v. Davis,* 15 F.3d 526, 531 (6th Cir. 1994); *United States v. Seago,* 930 F.2d 482, 488 (6th Cir. 1991).

Defendant Dicancio

Dicancio argues that he is entitled to an acquittal or, alternatively, a new trial with respect to count one. According to Dicancio, there is no evidence suggesting that he had any knowledge regarding the status of the FDA approval. Rather, Jackson testified that all information Dicancio received regarding FDA approval came directly from defendant Jackson. Dicancio argues that at all times he relied in good faith on Jackson's representations. Dicancio also claims that he had little involvement with Medical Safety Solutions ("MSS") and had no email address or office at MSS's research facility or headquarters. Dicancio further claims that he had no access or control over the financial aspects of MSS. Dicancio argues that there is no evidence that he "furthered" the conspiracy. As a result, the jury wrongly convicted Dicancio as a result of "guilt by association."

Upon review, the Court disagrees. As noted by the government, a witness from the FDA

3

testified that MSS did not file an application for approval with the FDA until October of 2012. Yet, for several years preceding this application, defendants made numerous representations to various investors that were patently false.  In addition, the representations conflicted with previous representations made by the same defendants.  By way of example, defendant Jackson informed Dicancio that "FDA verbal approval" was obtained on June 25, 2009.  Subsequently, however, Dicancio informed a potential investor that the approval was obtained as of March 29, 2010.  On a separate occasion, Decancio informed a different investor that the FDA "cleared" the product in January of 2011.  Subsequently, investors themselves grew concerned over the lack of FDA approval.  A number of investors approached defendants, including Dicancio, voicing concerns and questions about the status of the FDA approval.  Nonetheless, even in the face of these legitimate questions, Dicancio continued to solicit investors, repeating the same promises that FDA approval was imminent.  The Court finds that this evidence is sufficient to demonstrate that Dicancio did not act in good faith in relying on Jackson.

In addition, Dicancio worked with Jackson for 30 years.  Jackson was previously convicted of securities fraud and spent time in prison and Dicancio was aware of this fact.  For this additional reason, a rational juror could have concluded that Dicancio's reliance on Jackson's statements and promises was not done in "good faith."  Dicancio further held himself out to investors as part of the MSS "team."  For example, Dicancio sent a letter providing that "we have verbal approval as of the 29th of March.  We were told at that time to allow 10 working days for the approval letter to appear on the web site and receive our letter.  We called the FDA last wed. . . .  We will begin shipping to Canada this month."  Thus, contrary to Dicancio's argument, he held himself out to investors as actively participating in the FDA

4

approval process thus demonstrating his agreement to participate in the conspiracy.

The Court further agrees with the government that a rational trier of fact could have determined that the coordinated efforts of the defendants established the agreement element of count one. A number of emails exist from investors directed at Dicancio wherein the investors question the legitimacy of the FDA application and approval and even go so far as to request photographs of production of the product. In response to these emails, Dicancio contacted Jackson and Schureck and complained about these questions. Shortly thereafter, with respect to at least one investor, Dicancio contacted the investor and falsely informed him that "PDP" approval number came form the FDA even thought the FDA had not publicly disclosed the posted number. In addition, the cooridnated sales pitches defendants repeatedly made for years even after a number of investors questioned the legitimacy of the investment further support the jury's verdict with respect to the agreement element of count one.

The Court also agrees with the government that the evidence at trial showed that Dicancio knowingly and voluntarily joined the conspiracy. The Court finds that the volume of emails Dicancio routinely sent to investors containing false statements regarding the status of the FDA approval as well as the state of production are sufficient to support his conviction on count one with respect to the agreement element. In addition, Dicancio used high-pressure sales tactics, including soliciting investor funds and loans promising a high rate of return. These tactics were explained to the jury by various investors and the government further introduced evidence of these sales tactics in the form of recorded statements Dicancio made to undercover FBI agents posing as potential investors.

On the whole, the Court finds that, in viewing the evidence in the light most favorable to

5

the government, a rational trier of fact could have found the essential elements of count one beyond a reasonable doubt.  In addition, the Court finds that defendant fails to satisfy his burden of demonstrating the "extraordinary circumstance where the evidence preponderates heavily against the verdict."  As such, defendant is not entitled to a new trial.

Defendant Donohue

Donohue argues that he is entitled to an acquittal or new trial on count one because there is no affirmative evidence establishing that he knowingly joined a conspiracy.  According to Donohue, the conspiracy was formed before he began working at MSS.  In addition, there is no evidence that Donohue was aware of the fraudulent FDA statements made by Jackson.  This is especially so given that FDA approval processes can be drawn-out endeavors and, therefore, Donohue would have no reason to suspect that Jackson's statements were false.  According to Donohue, the government can only point to "the passage of time" as support for the jury's finding.  Thus, the jury could have convicted Donohue based on "guilt by association." Donohue points out that, although hired as MSS's regulatory consultant, he did not act directly with the FDA.  On the rare occasion when directed by Jackson, Donohue explained the FDA process to existing and prospective investors.  Jackson, however, provided all of the FDA-related information that Donohue gave to investors.  Donohue acknowledges that the government introduced testimony indicating that Donohue implied to the investors that he received information directly from the FDA.  Donohue notes, however, that he had virtually no dealings with the financial aspects of MSS and was not involved in selling shares.  Donohue also claims that he received no undocumented compensation.

Upon review, the Court agrees with the government that Dononhue is not entitled to the

6

relief he seeks.  Donohue sent a number of letters to shareholders containing false statements about the FDA approval process.  For example, Donohue sent letters indicating that budget wars caused the delay in obtaining FDA approval and that MSS obtained consultants to assist in the FDA approval process.  At other times, he indicated that the delay was caused by the "typing pool" or bad weather.  Donohue drafted a letter informing investors that MSS was cleared to market the medical device at issue.  At least some of these letters were routed through defendants Jackson and Schureck before they were sent to shareholders.  And, Jackson himself testified that he reviewed all letters that went to shareholders.  Moreover, the excuses provided by Donohue for the failure to obtain FDA approval were nearly identical to the excuses provided to investors by Donohue's co-defendants.   On the whole, the Court agrees with the government that a rational trier of fact could have found the "agreement" element of count one beyond a reasonable doubt.  Similarly, defendant fails to show that the jury's verdict on this issue was contrary to the manifest weight of the evidence.

Likewise, the Court agrees with the government that the evidence established that Donohue knowingly and voluntarily joined the conspiracy.  Throughout the scheme, Donohue touted himself as having significant experience with the FDA approval process and informed investors that he was MSS's "Executive VP of Operations."  He repeatedly indicated that he had personal contact with the FDA.  By way of example, he indicated in one email to a shareholder that Donohnue had requested a face to face meeting in DC.  Two weeks later, he stated, "we pushed for a meeting in DC with the FDA; a few of us going including counsel."  These emails occurred in the spring of 2011.  A representative from the FDA, however, testified that defendants did not file an application with the FDA for pre-market approval until October of

7

2012. And, like Decancio, Donohoue received complaints from shareholders expressing grave concerns over the lack of FDA approval. One shareholder reminded Donohue that he had previously indicated that FDA approval would be forthcoming within a couple of weeks. In response, Donohue lied about the existence of the FDA application and confirmed that he has expertise in this area. Defendants then rejected the investor's offer to use a Congressman to intervene and assist with the application.

And, as set forth above, Donohue and Dicancio met with FBI agents posing as investors. The government played the video and audio recordings from the meeting in which defendants again informed these "investors" regarding FDA approval and provided a fake FDA clearance number. Donohoue, along with Dicancio, engaged in high pressure sales tactics, including informing the "investors" that the share price would increase by 50% if the "investors" didn't purchase shares by an upcoming deadline.

In addition to the foregoing, Roger Zellner, Donohue's co-worker, testified that Donohue assisted in preparing the documents (including backdating them) associated with the "real" FDA application in 2012. Donohue questioned when the "black SUVs" would arrive and indicated that he believed he would have "plausible deniability" about the ongoing fraud.

On the whole, the Court finds that, in viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of count one beyond a reasonable doubt. In addition, the Court finds that defendant fails to satisfy his burden of demonstrating the "extraordinary circumstance where the evidence preponderates heavily against the verdict." As such, defendant is not entitled to a new trial.

**CONCLUSION**

For the foregoing reasons, Defendant, Daryl Dane Donohue's, Motion for Judgment of Acquittal on Count 1, Or, Alternatively, a New Trial on Count One (Doc. 123) and Defendant Deciancio's Motion for Acquittal/New Trial (Doc. 124) are DENIED.

IT IS SO ORDERED.

                                               /s/ Patricia A. Gaughan
                                               PATRICIA A. GAUGHAN
                                               United States District Judge

Dated: 7/7/16